IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Harshadkumar Nanjibhai Jadav, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:22cv136 (TSE/IDD) |
| | ) | |
| J. Woodson, | ) | |
|     Respondent. | ) | |

<u>**MEMORANDUM OPINION**</u>

Harshadkumar Nanjibhai Jadav ("Jadav" or "Petitioner"), a Virginia inmate proceeding

<u>pro se</u>, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his

conviction in the Circuit Court of Hanover County, Virginia for first-degree murder. [Dkt. No.

1]. Respondent has filed a Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos.

12-14]. Jadav was notified of his right to respond as required by <u>Roseboro v. Garrison</u>, 528 F.2d

309 (4th Cir. 1975) [Dkt. No. 15], and he has responded by filing a reply with exhibits. [Dkt.

Nos. 18, 19]. Accordingly, this matter is now ripe for disposition. For the reasons that follow,

respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

**I. Factual Background**

To begin with, a brief recitation of the factual background of this matter is necessary to

understand and to provide context to the instant habeas petition.  The following recitation of facts

is derived from the Court of Appeals of Virginia Order issued on December 28, 2018:

> [Jadav] and Reena Jadav were married on September 8, 2012, but by the summer
> of 2016, they were experiencing marital problems. They fought almost daily, and
> Reena frequently spent her weekends with her parents. In July 2016 [Jadav] began
> dating women he met through an online dating service. He told those women that
> he was single and even invited them to stay at the marital home while Reena was
> visiting her parents. One of the women rejected his sexual advances, but the other
> woman was physically intimate with him between the end of July and late August

2016. [Jadav] assured both women that he was seeking a serious, long-term relationship.

Unaware of her husband's infidelity, Reena traveled with [Jadav] to Nashville, Tennessee on August 29, 2016, when she started a new job with Regions Bank. The new position included life insurance policies with total coverage exceeding one million dollars. Reena named [Jadav] as the beneficiary of the policies. While [Jadav] was in Nashville with Reena, his Google account records showed searches using the terms "accidental death and dismemberment insurance," "homicide," and "death by natural causes."

The couple returned to their home in Hanover on Saturday, September 3, 2016. On the day of their return, they ate dinner with Reena's parents, Chandra and Sumitra Shrestha. When Reena went to the bathroom, [Jadav] spoke to Chandra in a hushed voice and asked him to advise his daughter not to communicate with her new employer in Tennessee because "they were not going back." [Jadav] told Chandra that the bank would have to fire her and pay her for another two weeks if Reena did not reply to the bank's communications.

That same evening, [Jadav] communicated with Felicia Smith, one of the women he had met online and had been dating since July 27, 2016. He told Smith that he missed her and could not wait to "cuddle" with her. Using the dating website, [Jadav] also texted another woman whom he had met online and suggested that they meet in person.

On Sunday, September 4, 2016, the day before Labor Day, Reena's parents and Reena attended a family dinner hosted by Reena's sister; when [Jadav] did not appear, Chandra called him and urged him to come. [Jadav] declined, explaining that he and Reena were fighting. After the dinner, Reena asked her parents to stop by her house in the Honey Meadows subdivision, and they arrived there between 8:15 p.m. and 8:30 p.m. [Jadav] was in the kitchen cooking when Reena, Sumitra, and Chandra arrived. Sumitra went upstairs with her daughter to help her unpack from her trip, and Chandra sat down in the living room while [Jadav] continued cooking. After the women went upstairs, [Jadav] emerged from the kitchen and removed Reena's cell phone from her purse.

When Sumitra returned downstairs, she announced that Reena had changed into her nightclothes and would join them shortly. [Jadav], who was still holding Reena's phone in his hands, encouraged Reena's parents to leave, telling them that Reena might want to leave with them if they stayed. Sumitra and Chandra complied and left the house between 9:30 p.m. and 9:45 p.m. They never saw their daughter again.

At approximately 11:00 p.m., Dr. Willie Stroble and Roger Hultgren, who lived in neighboring houses in the Honey Meadows subdivision, heard a woman's scream behind their houses. Both men looked from their homes toward their backyards, but the area was dark, and they saw nothing.

At 12:47 a.m. [Jadav] texted Reena's phone and asked her to tell him when she arrived at her parents' house, noting that he was "so seeeepyyyy [sic]."

2

The following morning, [Jadav] texted Reena's parents and asked if Reena was at their house. Chandra called [Jadav] immediately and told him that Reena was not with them. [Jadav] told Chandra that he and Reena went for a walk after Chandra and Sumitra left, but that when he and Reena returned home, Reena wanted [Jadav] to walk a second time. [Jadav] told Reena that he was tired and went upstairs to bed, leaving her watching television downstairs. He admitted to Chandra that he had taken Reena's car key, but noted that Reena told him that she was leaving and that she would call her father to pick her up.

Because Reena's jogging clothes were missing, [Jadav] speculated to Chandra that she might have gone for a walk. Chandra directed [Jadav] to search for her in the car while Chandra stayed on the phone. [Jadav] drove through the neighborhood in Reena's gray Prius and finally told Chandra that he saw Reena lying unconscious on the ground. [Jadav] told Chandra that he was calling 911 and hung up.

Dressed in black athletic pants, an orange shirt, and sneakers, Reena was lying on her left side in the grassy area behind Stroble's and Hultgren's houses. Her head was covered in blood, with visible blows to her face and the back of her head. A "gaping hole" in the top of her head exposed brain matter. When [Jadav] called 911, however, he did not state that she was clearly dead. Instead, he described her as "all bloodied up" and stated that she "look[ed] like she's not breathing." Based on [Jadav]'s ambiguous description, the 911 operator instructed him to turn Reena over on her back to start CPR. Rather than telling the operator that Reena was dead, [Jadav] responded that she was too heavy and "all jammed up." When the 911 operator asked [Jadav] if Reena was "beyond help," [Jadav] replied, "I'm not a doctor. I don't know."

Hanover County Sheriff's Sergeant Gardner arrived at the scene at approximately 5:44 a.m. on September 5, 2016. Gardner saw [Jadav] standing next to a gray Prius talking on the phone. Reena's body was nearby lying in the grass next to a black backpack and covered in blood. After seeing the condition of Reena's body, Gardner immediately approached [Jadav] and directed him to hang up the phone and to keep his hands visible while Gardner checked his car for a weapon. [Jadav] calmly told Gardner that Reena had gone out for a run the night before and that he had searched for her when she did not come home.

Deputy Dumond arrived at the scene at approximately 5:45 a.m. After handcuffing [Jadav], Dumond detained him in his police car for approximately two hours and recorded their conversation. [Jadav] told Dumond that he and Reena fought almost daily and acknowledged that they had been fighting the prior evening. When Reena told [Jadav] that she "didn't want to be in the same room" with him, he went upstairs and went to sleep. He stated that he did not realize Reena was missing until he woke up the following morning. [Jadav] noted that, after he found her, he attempted to perform CPR, but could not move her because "she's really heavy." Later, he asked Dumond why Reena was not in the ambulance. When Dumond informed [Jadav] that she was deceased, he responded, "You're kidding me." But he did not cry.

Investigator Laplaga arrived at the scene at approximately 7:30 a.m. on September 5, 2016. Laplaga examined the backpack on the ground next to Reena's body and found red and brown stains on the top of it. The backpack contained only a pair of work gloves. Laplaga executed a search warrant at [Jadav]'s house and found an open bag of tools in an upstairs closet. The tool bag contained multiple tools, but it did not contain a hammer.

Investigator Dover arrived at the scene at 7:05 a.m. and interviewed [Jadav] at approximately 8:15 a.m. [Jadav] told Dover that Reena became upset after her parents left without warning and that the couple took a walk together. When they returned home, Reena ate a snack and suggested a second walk, but [Jadav] declined. Angry, Reena told [Jadav] to go upstairs and announced that she was going to her parents' house. [Jadav] stated that he went to bed at approximately 10:30 p.m. and woke up at 12:30 a.m. to find Reena was not beside him. He noted that he texted her and asked her to let him know when she arrived safely at her parents' house. [Jadav] specifically told Dover that he did not leave his house between 10:30 p.m. on September 4, 2016, and 5:22 a.m. the following morning.

Investigator Cary checked [Jadav]'s cell phone records to determine his whereabouts on the night of the murder. During the weeks preceding the murder, Cary discovered that [Jadav]'s cell phone consistently "pinged" off the same cell tower between 11:00 p.m. until 6:00 a.m. each night. On the night of the murder, however, Cary noticed a "deviation in the pattern" between the hours of 11:00 p.m. and 6:00 a.m. At 11:31 p.m. [Jadav]'s phone was at his usual "home" cell phone tower, but "shifted" to the "301/295 tower" at 11:38 p.m. and then shifted again at 11:42 p.m. to the "301 tower south of New Ashcake." At 11:44 p.m. the phone shifted back to the "301/295 tower" and at 11:47 p.m. moved to the Atlee Station Road tower "towards [his] residence." By 12:01 a.m. on September 5, 2016, [Jadav]'s phone connected with his usual "home tower" and remained there until he made the 911 call four or five hours later. Stated generally, between 11:31 p.m. on September 4, 2016, and 12:01 a.m. on September 5, 2016, [Jadav]'s cell phone left his "home" cell tower and used three cell towers in three areas surrounding the Honey Meadows subdivision before returning home. Surveillance footage from businesses in the areas where [Jadav]'s phone traveled during that timeframe showed a gray Prius traveling the roads; the vehicle matched the one [Jadav] was driving when the police found him at the crime scene.

On Wednesday, September 7, 2016, Melinda Mitchell discovered a hammer in the grassy ravine abutting Route 301 behind her house. Strewn about the embankment she found a size medium blue shirt with red stripes, a pair of men's gray Levi's pants, size 36/30, a pair of gray Hanes brand men's underwear, and a cleaning wipe. Mitchell placed the hammer in her husband's toolbox and threw away the underwear and the wipe. Planning to donate the shirt and the pants, she washed them.

On Saturday, September 10, 2016, [Jadav] attended Reena's funeral, but did not join the family at a function immediately after the funeral or in Virginia Beach the following day to spread Reena's ashes in the ocean. As Reena's family drove back from Virginia Beach, her brother Gaurav Shrestha texted [Jadav] and asked

if the family could gather some of Reena's belongings as keepsakes; [Jadav] informed Gaurav that he had donated all of her possessions to Goodwill while the family was at the beach.

On Monday, September 12, 2016, Mitchell saw police searching the area next to the road behind her house and turned over the items she had found five days earlier. The shirt was identical to the one [Jadav] had been wearing when Reena's parents saw him at 9:30 p.m. on September 4, 2016. Traces of blood were visible on the hammer head and claw, and forensic analysis determined that Reena could not be statistically eliminated as the source. Furthermore, DNA material was found in the men's underwear recovered from Mitchell's yard, and neither [Jadav] nor Reena could be statistically eliminated as the sources. Cary confirmed that [Jadav]'s cell phone used a cell tower serving the area around Mitchell's home sometime between 11:31 p.m. on September 4, 2016 and 12:01 a.m. on September 5, 2016. Using "time-distance equations" and how much time passed between [Jadav]'s phone moving from one cell tower to the next, Cary was able to narrow the routes on which [Jadav]'s phone traveled. Cary drove one potential route from Honey Meadows subdivision to Mitchell's house and back to Honey Meadows and found that the round-trip excursion took twelve minutes and one second.

At 2:30 p.m. on September 12, 2016, the police arrested [Jadav]. At the time of his arrest, he was wearing a medium size polo shirt and size 36/30 Levi's jeans. He was also carrying a backpack containing ten thousand dollars in cash, his passport, Reena's passport, correspondence explaining how to collect on Reena's life insurance policies, and a pair of men's Hanes underwear identical to the ones discarded in Mitchell's back yard.

At trial, medical examiner Dr. Michael Hays testified that Reena had suffered "at least" fifteen blows to her head, all of which were consistent with having been struck with either the head or the claw of a hammer. She had been struck in the face at least six times, breaking her jaw and knocking out her teeth. The left and right sides of her head, as well as the back of her head showed signs of trauma, including a quarter-inch round "puncture" wound near her right temple consistent with an object other than a hammer head piercing her skull.

[Dkt. No. 14-3 at 5-10].

## II. Procedural History

After a multiple day jury trial, from June 12, 2017 to June 15, 2017, the jury found Jadav guilty of first-degree murder and recommended a sentence of life imprisonment. [Dkt. No. 14-1].

On January 25, 2018, the circuit court sentenced Jadav to life in prison. [Dkt. No. 14-2]. Jadav is

in custody pursuant to a final order of the Circuit Court of Hanover County entered on May 25, 2018. [Dkt. No. 14-2] (Commonwealth v. Jadav, Case No. CR16000897).

Jadav, by counsel, appealed his convictions to the Court of Appeals of Virginia raising three assignments of error. [Dkt. No. 14-3] (Jadav v. Commonwealth, Record No. 0223-18-2). First, Jadav argued that the trial court erred in issuing Jury Instruction 13, regarding malice, because the instruction "needlessly singled out the element of malice for greater consideration than was called for in this case." [Id. at 3].  Second, Jadav argued that the trial court erred in issuing Jury Instruction 11, regarding premeditation and deliberation, as the instruction "singled out [factors] for emphasis" and was impermissibly "weighted in favor of the Commonwealth" because the instruction suggested that certain facts had already been proved, rather than submitting those factual issues to the jury." [Id. at 4, 5].  Finally, Jadav challenged the sufficiency of the evidence to support his murder conviction. [Id. at 6].

The Court of Appeals of Virginia rejected each of the three arguments.  First, the Court of Appeals of Virginia found Jadav's argument regarding Instruction 13 was waived because no timely objection was raised at trial. [Id. at 3]. Second, the Court of Appeals of Virginia concluded that Jadav's argument that Jury Instruction 11 singled out factors for emphasis was meritless, and that Jadav's argument that Jury Instruction 11 was weighted in favor of the Commonwealth was waived. [Id. at 4, 5].  Finally, the Court of Appeals of Virginia rejected Javad's third assertion of error regarding the sufficiency of the evidence, and concluded instead that the evidence was sufficient to sustain his conviction for first-degree murder. [Id. at 6-16].

Jadav, by counsel, filed a petition for appeal in the Supreme Court of Virginia, dropping only those arguments which the Court of Appeals of Virginia concluded had been waived. The court refused his petition for appeal on October 7, 2019. [Dkt. No. 14-4]. Jadav v.

Commonwealth, Record No. 190570.  Jadav then sought review by the Supreme Court of the

United States, which was denied. 140 S. Ct. 1217 (2020).

On or about July 30, 2020,[1] proceeding pro se, Jadav filed a habeas petition in the Circuit

Court of Hanover County attacking the validity of his convictions, asserting the following

claims:

I.  The prosecution suppressed exculpatory, material video evidence and thus violated due process under Brady v. Maryland, 373 U.S. 83 (1963).

II.  Trial counsel was ineffective for the failure to investigate, develop, and produce at trial exculpatory video evidence.

III.  Trial counsel was ineffective for the failure to investigate and present at trial exculpatory alibi evidence – a digital forensic report.

IV.  Trial counsel was burdened under a conflict of interest.

V.  Prosecutors violated due process under Brady by suppressing exculpatory luminol test results.

VI.  Trial counsel was ineffective for failing to investigate and impeach Investigator LaPlaga.

VII.  Trial counsel was ineffective for failing to investigate the Commonwealth's evidence.

VIII.  The prosecution violated their obligation under Brady by failing to disclose exculpatory text messages exchanged between the petitioner and Investigator Dover.

IX.  Trial counsel was ineffective for failing to investigate and present at trial exculpatory text messages.

X.  Trial counsel was ineffective for failing to authenticate cell phone location records.

XI.  Trial counsel was ineffective for failing to protect the petitioner's rights under Miranda v. Arizona, 384 U.S. 436 (1966).

XII.  Trial counsel was burdened under a conflict of interest.

---

[1] Jadav's application to proceed in forma pauperis was dated July 30, 2020. See Lahey v. Johnson, 283 Va. 225, 229 720 S.E.2d 534, 536 (2012) (dismissing a habeas petition as untimely filed because the payment of costs and fees was not made until after the statute of limitations had expired and the petition was not accompanied by an in forma pauperis application because a habeas petition "will not be filed without payment of court costs unless the petitioner is entitled to proceed in forma pauperis and has executed the affidavit in forma pauperis") (quoting Va. Code Ann. § 8.01-655(B)).

[Dkt. No. 14-5] (Jadav v. Woodson, Case No. CL20-2620). The state habeas court dismissed the petition on October 27, 2020. [Hab. at 190-221]. The Supreme Court of Virginia refused Jadav's petition for appeal on November 12, 2021. [Dkt. No. 14-8]. Jadav v. Woodson, Record No. 210105.  Jadav, again, sought review by the Supreme Court of the United States and, again, such review was denied. 142 S. Ct. 1450 (2022).

On July 24, 2020, Jadav, proceeding pro se, filed a petition for a Writ of Actual Innocence in the Court of Appeals of Virginia. Jadav v. Commonwealth, Record No. 0908-20-2. The petition relied upon: (i) a police report from one of the responding officers; (ii) a certificate of DNA analysis; (iii) the autopsy report regarding the victim; (iv) a digital forensic report of Jadav's computer; (v) an unsigned consent order from a related civil case, finding Jadav a "slayer" under Code § 64.2-2500; (vi) correspondence from Jadav's sentencing/appellate counsel; (vii) correspondence from the Virginia State Bar to Jadav concerning a complaint Jadav filed against trial counsel; (viii) portions of the trial transcript; and (ix) an affidavit by the lead trial prosecutor. (WAI at 1-372). The court appointed counsel to represent Jadav on December 4, 2020. (WAI at 399). Following a response and additional briefing, the court denied the writ on December 7, 2021. (WAI at 1672-91). Jadav, by counsel, filed a petition for appeal in the Supreme Court of Virginia. Jadav v. Commonwealth, Record No. 220032. The court refused the petition for appeal on September 23, 2022.[2] (Record No. 220032 at 196).

### III. Federal Petition

On February 3, 2022, Jadav, proceeding pro se, timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges the following grounds for federal habeas corpus relief:

---

[2] Jadav also filed a pro se petition for appeal raising additional assignments of error.

8

Ground 1: Claims of Police and Prosecutorial Misconduct

    A. Prosecutor presented false evidence and violated due process under <u>Napue v.</u> <u>Illinois</u>, 360 U.S. 264 (1959), and also violated the petitioner's <u>Miranda</u> rights, violating the petitioner's right to a fair trial.

    B. Prosecutors suppressed exculpatory material of the surveillance video in violation of Brady. (state habeas Claim I)

    C. Prosecutors presented false evidence regarding the petitioner's text messages and attempt to escape. (state habeas Claim VIII)

    D. Prosecutors violated <u>Brady</u>, <u>Napue</u>, and <u>California v. Trombetta</u>, 467 U.S. 479 (1984), by suppressing luminol testing results. (state habeas claim V)

    E. Prosecutors deliberately mispresented and fabricated google report to violate <u>Napue</u>.

    F. Prosecutors deliberately destroyed and misrepresent the victim's gunshot wounds by not reporting it in the autopsy report.

Ground 2: Claims of Ineffective Assistance of Counsel

    A. Counsel failed to investigate and present into evidence exculpatory police reports regarding gunshot wounds on the victim to counter the theory of blunt force trauma as cause of death.

    B. Counsel failed to object properly to the admission of google report.

    C. Counsel failed to investigate, develop, and procedure exculpatory video evidence. (state habeas Claim II)

    D. Counsel failed to protect the petitioner's Miranda rights. (state habeas Claim XI)

    E. Counsel failed to investigate the state's evidence. (state habeas Claim III)

    F. Counsel was burdened by a conflict of interest. (state habeas Claims IV and XII)

    G. Counsel failed to investigate the 911 call and failed to impeach the prosecution when they presented a fake audio at trial.

    H. Counsel failed to object to Jury Instruction 11.

    I. Counsel verbally abused the petitioner in his closing argument.

Ground 3: Claim of Insufficient Evidence

Ground 4: Claim of Structural Error

## IV. Exhaustion and Procedural Default

Respondent first argues that several of petitioner's claims are defaulted.  Specifically,

respondent contends that Grounds 1 (A), (E), and (F); Grounds 2 (A), (B), (G), (H), and (I); and

Ground 4 of petitioner's habeas petition are procedurally defaulted.  By contrast, respondent

9

concedes that Grounds 1 (B), (C), and (D); Grounds 2 (C), (D), (E), and (F); and Ground 3 are exhausted and not defaulted.

Before bringing a federal habeas petition, a petitioner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v. Greer, 481 U.S. 129 (1987). To comply with this exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002).

To be sure, a "claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). But "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. (quoting Gray, 518 U.S. at 162).

Importantly, to satisfy the exhaustion requirement, a petitioner must have exhausted both the claim and the facts upon which a petitioner relies. Indeed, as the Fourth Circuit has held, a petitioner satisfies the exhaustion requirement only where the petitioner presents "both *the operative facts* and the controlling legal principles" to the state court for review. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (emphasis added). The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This is so because AEDPA limits federal habeas "review under

10

§ 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Thus, the Fourth Circuit has held that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" Porter v. Zook, 898 F.3d 408, 443 (4th Cir. 2018) (quoting Jones v. Clarke, 783 F.3d 987, 991 (4th Cir. 2015)).

Respondent is correct that Grounds 1 (A), (E), and (F); Grounds 2 (A), (B), (G), (H), and (I); and Ground 4 of petitioner's habeas petition are procedurally defaulted.[3] Those claims were not raised during the prior state proceedings and have not been presented to the highest state court. These claims are deemed exhausted and defaulted, because Virginia's statute of limitations and statutory bar on successive petitions prevents petitioner from now bringing them on state habeas. See Va. Code § 8.01-654(A)(2) (providing limitations period) and Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."). See Clagett v. Angelone, 209 F.3d 370, 379 (4th Cir 2000) (holding Virginia's limitations period and bar against successive petitions independent and adequate state grounds); see also Gray v. Netherland, 518 U.S. 152, 162 (1996) (holding that a claim barred by Va. Code § 8.01-654(B)(2) was "not cognizable in a federal suit for the writ").

*A. Cause and Prejudice*

A federal court may review a defaulted claim, however, if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005). "'[C]ause' under the cause and prejudice test must be something external to the petitioner,

---

[3] Respondent acknowledges that the other Grounds—Grounds 1 (B), (C), and (D), Grounds 2 (C), (D), (E), and (F), and Ground 3—were exhausted and are not defaulted.

something that cannot fairly be attributed to him . . . ." Coleman, 501 U.S. at 753 (citation

omitted). To establish cause, a petitioner must "show that some objective factor external to the

defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477

U.S. 478, 488 (1986). "Bare allegations" of constitutional error are not sufficient grounds for

habeas relief; the petitioner must proffer evidence to support his claims. Nickerson v. Lee, 971

F.2d 1125, 1135 (4th Cir. 1992).

The existence of cause ordinarily turns upon a showing of (1) a denial of effective

assistance of counsel, (2) a factor external to the defense which impeded compliance with the

state procedural rule, or (3) the novelty of the claim.  See Coleman v. Thompson, 501 U.S. 722,

753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845

F.2d 1238, 1241-42 (4th Cir. 1988).

To show "prejudice," a petitioner must show an alleged constitutional violation worked

to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis removed). But a court

need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66

F.3d 1350, 1359 (4th Cir. 1995).

Here, Jadav alleges ineffective assistance of counsel as the requisite "cause."  To be sure,

in some circumstances, ineffective assistance of counsel may be sufficient "cause" for a

defaulted claim.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  But ineffective assistance

of counsel supplies the requisite "cause" only where the petitioner raised the ineffectiveness

argument as a cause for the defaulted substantive claim during his state habeas proceedings.

Powell v. Kelly, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), aff'd, 562 F.3d 656 (4th Cir. 2009).

Here, petitioner did not exhaust the ineffective assistance of counsel claims on which he seeks to

rely as cause for his default.  Thus, those ineffective assistance of counsel claims cannot be considered as cause under Edwards to review the substantive claims.

Jadav further asserts as cause for unspecified defaults the delay in the mail during the state habeas proceedings in circuit court. [Dkt. No. 18 at 6]. Jadav, however, did not file an objection in the circuit court or raise the issue as an assertion of error in his subsequent petition for appeal to the Supreme Court of Virginia. Further, Jadav has not noted any "error" in the circuit court's order that has any merit, which is confirmed by the Supreme Court of Virginia's order refusing his petition for appeal.[4]

### B. Actual Innocence

The Supreme Court held in McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." The exception applies only in a "severely confined category"— that is, cases in which reliable *new* evidence shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. Id. (citation omitted; emphasis added). Here, Jadav has presented no new evidence to establish his claim of actual innocence; instead, he reiterates various allegations of which he was aware at the time of trial.[5]

### C. *Martinez v. Ryan, 566 U.S. 1 (2012)*

---

[4] See Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's "ignorance of the law and the procedural requirements for filing a timely notice of appeal are insufficient to establish cause for his procedural default."); Dellinger v. Bowen, 301 F.3d 758, 766, 767 (7th Cir. 2002) ("ignorance" of post-conviction procedures does not "constitute cause" to excuse a default).

[5] Jadav, proceeding pro se, sought a writ of actual innocence from the Court of Appeals of Virginia. The writ was based on many of the same allegations against both the Commonwealth and his counsel contained in his federal petition. The petition for a writ of actual innocence was dismissed on December 7, 2021. [Dkt. No. 14-9].

In <u>Martinez</u>, the Supreme Court established a narrow exception to the "cause and prejudice" test for a "substantial claim" of ineffective assistance of counsel claims. <u>Id.</u> at 13-15. To establish ineffective assistance, a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the alleged deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 669 (1984). Courts apply a strong presumption that counsel's performance, especially regarding trial management and strategy, was within the range of reasonable professional assistance. <u>Id.</u> at 689. To demonstrate prejudice, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. <u>Id.</u> at 694. Jadav's defaulted ineffective assistance of counsel claims are not substantial.

   *D. Defaulted Claims: Grounds 1 (B), (C), and (D)*

The state habeas court found Jadav's federal Grounds 1 (B), (C), and (D) (which assert <u>Brady</u> claims regarding video evidence, text messages, and luminol testing; raised as Claim I, Claim V, and Claim VIII in state habeas), were defaulted because they were not raised at trial and pursued on direct appeal. (Hab. at 196-97) (citing <u>Morrisette v. Warden</u>, 270 Va. 188, 188, 613 S.E.2d 551, 554 (2005) (citing <u>Slayton v. Parrigan</u>, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974); <u>Brooks v. Peyton</u>, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)). In each of the <u>Brady</u> claims against the prosecution, the state habeas court found that it was clear both from the record and Jadav's own petition that the evidence Jadav alleges was suppressed — video surveillance, luminol testing, and his own text messages — were known to the defendant prior to or during trial, and were available to be utilized at trial. (Hab. at 197, 197-201). Application of <u>Slayton</u> constitutes an independent and adequate state law ground that precludes federal review.

Lewis v. Wheeler, 609 F.3d 291, 309 (4th Cir. 2010); Walker v. Kelly, 589 F.3d 127, 131 (4th Cir. 2009); Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006).

Further, the prosecutor filed an affidavit in the state habeas proceedings indicating that Jadav's counsel had open-file discovery, and that the prosecutor's file contained a disc of the portions of the surveillance video the Commonwealth intended to introduce at trial, and the police report, in which the officer listed that he collected surveillance video covering the night of the murder and the early morning hours of the following day; and counsel was advised that there were items of physical evidence in the possession of law enforcement that the defense attorney could view by making an appointment. (Hab. at 198).[6]

In addition, trial counsel was aware of the luminol testing, had discussed it with the investigator, and discussed with Jadav whether he wanted a continuance before he was arraigned. Jadav decided he did not want a continuance. [Id. at 11-12]. Lastly, Jadav was certainly aware of his own text messages. As the state habeas court correctly found,

> [t]here is no Brady violation when the defendant had equal access to the information. See Epperly v. Booker, 997 F.2d 1, 10 (4th Cir. 1993) ("where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine") (quoting United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990)).

[Id. at 12]. Petitioner has not demonstrated cause and prejudice or a miscarriage of justice to excuse his defaults.

*E. Defaulted Claims: Ground 1 (A), (E), (F), Ground 2 (A) (B) (G) (H) (I), and Ground 4*

---

[6] In denying the writ of actual innocent, which made a claim regarding the portion of the video not included at trial, the court noted this claim had no merit because "the habeas court found as a fact that the video did not show the crime scene; instead, 'it show[ed] the street upon which a car would likely travel to exit the neighborhood.'" [Dkt. No. 14-9 at 12 n.13].

In Ground 1 (A), Jadav claims the 911 tape was fabricated and challenges his voluntary statements made to officers. Jadav provides no support for his self-serving allegations that the prosecution fabricated the 911 tape. A habeas petition "is expected to state facts that point to a real possibility of constitutional error," and "vague and conclusory allegations" are not entitled to relief and are subject to summary dismissal. United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (citations omitted); see also Beyle v. United States, 269 F. Supp. 3d 716, 726 (E.D. Va. 2017) ("'[U]nsubstantiated and largely conclusory statements' are insufficient to carry a petitioner's burden as to the two prongs of" the Strickland test) (citations omitted).

In Ground 1 (E), Jadav alleges that the prosecution suppressed exculpatory evidence in a Google report, which Jadav admits his trial counsel gave him after trial. [Dkt. 1 at 44]. Trial counsel had full access to the report and used it at trial himself. Jadav fails to demonstrate any misconduct by the prosecution. [Id.].

In Ground 1 (F), Jadav alleges that the prosecution destroyed evidence of and misrepresented the victim's gunshot wounds. The record in this case establishes the victim's head wounds resulted in severe damage to her skull. The first officers that arrived on the scene reported that the victim had "an apparent gunshot wound to the head." [Dkt. No. 1-1 at 52, 53, 54]. The speculation of the initial officers within ten minutes of arriving at the scene was later disproved by the autopsy and does not constitute destruction or misrepresentation of the evidence. The reports were available to trial counsel and the autopsy determined from examining the victim's wounds that the victim had not been shot. The autopsy report and the record clearly demonstrate that Jadav attacked his wife with a hammer and she suffered numerous injuries to her skull. (CCT at 1605-12, Comm. Ex. No. 37). This claim is without any merit.

16

In Ground 2 (A), Jadav claims that defense counsel failed to investigate and present evidence regarding the victim's gunshot wounds. Again, this claim is patently false and a mischaracterization of the facts. Jadav beat his wife to death with a hammer – which was consistent with the prosecution's theory at trial and is supported by the autopsy. The victim was so badly injured, as established by the photographs introduced at trial, that her skull was completely open. Thus, to the extent officers initially thought she may have been shot when they first arrived, those observations were later disproved by the autopsy. Jadav fails to proffer any actual evidence of gunshot wounds that would have been discovered and fails to proffer anything other than his self-serving, baseless statements. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"). The claim is conclusory and does not meet the criteria for a substantial claim of ineffective assistance of counsel.

In Ground 2 (B), Jadav alleges that counsel failed to object properly to the admittance into evidence of a Google report. (CCT at 1922-2204, Comm. Ex. No. 57).[7] Jadav fails to demonstrate what objection to the report counsel should have made, much less that it would have been successful. See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable"); see also Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (holding counsel not required to file frivolous motions). Jadav also fails to demonstrate that in light of the overwhelming evidence of his guilt, this had but slight effect on his trial.

---

[7] Trial counsel objected to the Google report, which included emails, arguing it was not a business record and that Google was an electronic communication service provider under Virginia Code § 19.2-70.3(H). (6/14/17 Tr. at 123-30).

Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). Therefore, it is not a substantial claim under Martinez.

In Ground 2 (G), Jadav alleges that counsel was ineffective for failing to investigate the 911 audio call and determine it was fake. Again, Jadav offers no factual basis that the 911 tape was fabricated. Beaver, 93 F.3d at 1195. The claim is conclusory and does not meet the criteria for a substantial claim of ineffective assistance of counsel.

In Claim 2 (H), Jadav alleges that counsel was ineffective for failing to object to jury Instruction No. 11. On direct appeal, the Court of Appeals of Virginia held that

> [a]lthough [Jadav] argues that Instruction Number 11 improperly "singled out for emphasis" the factors the jury could consider in deciding premeditation, the instruction correctly stated that certain factors may be considered in determining whether the killing was premeditated. Furthermore, the trial court also instructed the jury that "'[willful, deliberate, and premeditated' means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time." (Instruction Number 10). Viewed in context and based on Epperly [v. Commonwealth, 224 Va. 214, 232 (1982)] and Rhodes [v. Commonwealth, 238 Va. 480, 485 (1989)], Instruction Number 11 properly stated the law concerning the issues fairly raised by the evidence with regard to premeditation. See [Molina v. Commonwealth, 272 Va. 666, 671 (2006)]. Accordingly, the trial court did not err by granting the instruction.

(CAV at 94). Jadav argues that Instruction No. 11 allowed the jury to presume that the attack was "brutal" and that the petitioner lacked "remorse." [Dkt. No. 1 at 86-87]. Jadav argues that the instruction violated the principles announced in Sandstrom v. Montana, 442 U.S. 510 (1979) because it allowed the jury to presume the attack was brutal, that Jadav lacked remorse, and that Jadav attempted to "avoid detection." [Dkt. No. 1 at 86-87]. However, "'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" United States v. Park, 421 U.S. 658, 674 (1975) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). "In evaluating jury instructions, [federal courts] consider how the jury

would have reasonably understood the challenged instruction in the context of the instructions as a whole." United States v. Moran, 493 F.3d 1002, 1009 (9th Cir. 2007) (citing Francis v. Franklin, 471 U.S. 307, 315 (1985)).

At trial, the jury was instructed on the presumption of innocence, circumstantial and direct evidence, credibility, drawing inferences, the elements the Commonwealth had to prove, and avoiding detection.

> [Instruction No. 1]. The defendant is presumed to be innocent. You should not assume the defendant is guilty because he has been charged and is on trial. This presumption of innocence remains with the defendant throughout the trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves each and every element of the crime beyond a reasonable doubt. This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence.

> However, suspicion or probability of guilt is not enough for a conviction.

> ****

> [Instruction No. 4]. It  is  not  necessary  that  each  element  of  the  offense  be proved  by  direct  evidence,  for  an  element  may  also  be  proved  by circumstantial  evidence.  You  may  convict  the  defendant  on  circumstantial evidence  alone,  or  on  circumstantial  evidence  combined  with  other  evidence, if  you  believe  from  all  the  evidence  that  the  defendant  is  guilty  beyond  a reasonable  doubt.

> When the Commonwealth  relies upon circumstantial evidence, the circumstances proved  must be consistent with guilt and inconsistent with innocence. It  is not sufficient that the circumstances  proved create a suspicion of guilt, however strong, or even a probability of guilt.

> The evidence as a whole must exclude every reasonable theory of innocence.

> ****

> [Instruction No. 5]. You are the judges of the facts, the credibility of the witnesses, and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and, if any have been shown, their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.

You may not arbitrarily disregard believable testimony of a witness. However, after you have considered all the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper.

You are entitled to use your common sense in judging any testimony. From these things and all the other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.

**** 

[Instruction No. 6]. The statements presented to you as having been made by the defendant are submitted for your consideration along with all the other evidence. The weight, value, credibility, and reliability of those statements are questions for your determination.

****

[Instruction No. 7]. You may infer that every person intends the natural and probable consequences of his acts.

****

[Instruction No. 9]. The defendant is charged with the crime of first-degree murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1)     That the defendant killed Reena Jadav; and

(2)     That the killing was malicious; and

(3)     That the killing was willful, deliberate, and premeditated.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty of first degree murder but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged but you do not find beyond a reasonable doubt that the killing was willful, deliberate and premeditated, then you shall find the defendant guilty of second degree murder but you shall not fix the punishment until your verdict has been returned and further evidence has been heard by you.

If you find from the evidence that the Commonwealth has failed to prove beyond a reasonable doubt any of the above offenses then you shall find the defendant not guilty.

****

[Instruction No. 10]. "Willful, deliberate, and premeditated" means a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time.

**\*\*\*\***

[Instruction No. 11]. In deciding whether premeditation and deliberation exist, you may consider the brutality of the attack, whether more than one blow was struck, the disparity in size and strength between the defendant and the victim, the concealment of the victim's body, the defendant's lack of remorse and the defendant's efforts to avoid detection.

**\*\*\*\***

[Instruction No. 12]. You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

A deadly weapon is any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

**\*\*\*\***

[Instruction No. 13]. Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge. Malice may be inferred from any deliberate, willful, and cruel act against another, however sudden.

Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to demonstrate an absence of deliberate design to kill, or to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.

If a person acts upon reflection or deliberation, or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.

**\*\*\*\***

[Instruction No. 14]. The possession of the tools suitable for effecting an escape or flight, after the accused believes he is suspected of a crime, is not sufficient evidence in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other evidence in the case in determining the guilt or innocence.

(CCT at 143, 146-49, 151, 153-56). Based upon the totality of the instructions, the jury was properly instructed and would not have presumed either that the attack was brutal, Jadav lacked remorse, or that he was avoiding detection.

The jury was expressly instructed that it had to find each element of the offense beyond a reasonable doubt and that it was able to infer but not assume. The evidence at trial, however, was overwhelming, and not just on the three specific points (brutality of the attacked, lack of remorse, and avoiding detection). First, the murder of Jadav's wife could only be described as brutal. The forensic examination established that victim suffered at least fifteen blows to her head and a puncture wound near her right temple by an object other than a hammer. (CCT at C-Ex. 37 at 2, 4; CAV at 100). Second, the summary of the trial evidence establishes that Jadav not only displayed little if any remorse over his wife's death, but he had a large sum of cash and his passport on him when he was arrested.

> …. [Jadav] experienced no remorse upon learning of Reena's death; he showed no signs of grief upon finding Reena's brutalized remains or in discussing her death with the police. [Jadav] avoided telling the 911 operator that Reena was dead, despite her gruesome and extensive head injuries, and instead claimed that she was too heavy to move, a claim that the medical examiner investigator later contradicted when she moved Reena "rather effortlessly." When Dumond later told him that Reena was deceased, his response was, "You're kidding me." Later, [Jadav] attended Reena's funeral, but did not join her family afterward and participate in spreading his wife's ashes. Instead, he cleared the house of her personal belongings. When he was finally arrested, he was carrying a backpack with a large amount of cash, passports, and instructions on how to collect Reena's life insurance proceeds.

(CAV at 102). Lastly, the other evidence (including his infidelity, searching the terms "homicide" and "insurance" during the week before the murder, his cell records and the inconsistency between his statements that he was home during the times his cell phone left the neighborhood and then returned, as well as the murder weapon being recovered next to Jadav's

shirt, pants, and underwear, are each highly incriminating. Javad's trial counsel was not ineffective under either prong of Strickland for not objecting to the instruction.

In Claim 2 (I), Jadav alleges that counsel "abused" him in his closing argument by pointing out that Jadav was unfaithful to his wife, had sex with another woman in the marital home, and was a "bad person." [Dkt. No. 1 at 89]. "[C]ounsel's concession of a client's guilt does not automatically constitute deficient performance.... there is a distinction which can and must be drawn between ... a tactical retreat and ... a complete surrender." Baker v. Corcoran, 220 F.3d 276, 295-296 (4th Cir. 2000) (internal citations and quotations omitted). "[T]actical retreats may be reasonable and necessary within the context of the entire trial, particularly when there is overwhelming evidence of the defendant's guilt." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995) (emphasis added). See also Young v. Catoe, 205 F. 3d 750, 759-60 (4th Cir. 2000); Clozza, 913 F.2d at 1099-1100. Here, the evidence of Jadav's infidelity and guilt was overwhelming, and counsel's arguments, especially at the sentencing phase, were more than reasonable in attempting to appeal to the jury in order to argue for a lower sentence. "Standing alone, unsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel." Bell, 72 F.3d at 429. Claim 2(I) is not a substantial claim.

In Ground 4, petitioner alleges structural error based upon counsel's argument during the sentencing phase. [Dkt. No. 1] (citing McCoy v. Louisiana, 138 S. Ct. 1500, 1509 (2018)). After the jury had found him guilty, Jadav testified at his sentencing that he was innocent. (6/15/17 Tr. at 109). Jadav also testified at sentencing — about his remorse for his wife's murder while maintaining he did not do it (id.); about his closeness to the victim's parents before the murder (id. 110); that he realized he faced a "lengthy period of incarceration" and that he would try during that time to help others; and that he had never been in trouble before. (Id. 111-12). In his

testimony, Javad stated he had "no clue" how long a sentence he would receive, and he acknowledged it could be "five, ten, or 15 years." (Id. 112). Javad acknowledged during his testimony that he understood the jury's "sentencing options" provided for "a lengthy period of incarceration," which could be between "20 years and a potential life sentence." (Id. at 111, 112).

 In arguing the appropriate sentence, counsel argued that Jadav had

- "made a mistake… done this horrible thing;"
- that the jury should "credit the fact that [Javad] had not committed any other crimes" and that there was "good reason to believe that this will rehabilitate him;"
- that the jury should "give him credit for the fact that but for this" Javad had not committed any "other crime;"
- that Jadav had "lived an exemplary life up to the events of 2015, 2016, and that at that point he went astray and became this horrible person who cheated on his wife and by your verdict committed these horrible crimes against her."

Counsel asked the jury to impose a sentence of "30 years." (Id. at 120).

 Petitioner asserts that his claim should be evaluated under McCoy rather than Strickland. McCoy held that when a "client's autonomy, not counsel's competence, is in issue," the Strickland test does not apply. 138 S. Ct. at 1510.  But petitioner is incorrect.  McCoy held that a defendant retains the discretion to insist on maintaining his innocence throughout the guilt phase of trial, notwithstanding his counsel's view about the correct trial strategy to employ.  But McCoy is not applicable after a defendant has already been found guilty.  These statements made by counsel were made at the sentencing phase, not at trial, limiting McCoy's applicability.

 Indeed, Jadav's position, that his claim of ineffective assistance should not be evaluated under Strickland, would effectively expand the scope of McCoy beyond a defendant's autonomy over the objective of his defense, and subjugate and displace the attorney's authority over counsel's strategic decisions to reach the client's objective. See McCoy, 138 S. Ct. at 1509 (citing Gonzalez v. United States, 553 U.S. 242, 249 (2008)) ("Preserving for the defendant the

24

ability to decide whether to maintain his innocence should not displace counsel's, or the court's, respective trial management roles."); see also United States v. Rosemond, 958 F.3d 111, 122-23 (2d Cir. 2020) ("[W]hen a lawyer makes strategic concessions in pursuit of an acquittal, there is no McCoy violation assuming, of course, the defendant's objective was to maintain his non-guilt[.]"); Yannai v. United States, 346 F.Supp.3d 336, 344 (E.D.N.Y. 2018) ("[T]he question of how to present an argument of innocence is not [within the client's control], and McCoy cannot be read so broadly."). If a petitioner fails to show that an alleged error is a violation of his autonomy violation under McCoy, the error is reviewed under Strickland's analysis. See United States v. Khan, 769 F. App'x 620, 623-24 (10th Cir. 2019).

Further, and in any event, as explained in Weaver, which involved a claim of structural error (denial of a right to a public trial), there is "a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel." 137 S. Ct. at 1912. In reaching this conclusion, Weaver observed that when a defendant raises and preserves a structural error before the trial court, he has provided the court an opportunity to "cure the violation" by taking corrective action or at least "explaining the reasons" for not acting. Id. The opportunity to cure is the basis for presuming prejudice on direct review because "the systemic costs of remedying the error are diminished to some extent .... because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." Id.[8] But when such claims are "raised in

---

[8] In McCoy, the trial record established that the defendant, before trial, had made known to the court and his counsel (Larry English) that he was adamantly against any concession of guilt. 138 S. Ct. at 1506-07. In a hearing two weeks before his trial McCoy's attorney told the trial judge that McCoy

> was "furious" when told … that English would concede McCoy's commission of the triple murders. Id., at 286. McCoy told English "not to make that concession," and English knew of

postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases. The finality interest is more at risk." Id. (citing Strickland, 466 U. S., at 693-94). Because "the finality interest is more at risk" given that "more time will have elapsed" between trial and collateral review as compared to trial and direct review, a higher standard applies on collateral review.  Moreover, the allegation of structural error has no merit, and when the claim is evaluated under Strickland, Jadav does not state a claim, much less a substantial claim, of structural error.

Petitioner has not demonstrated cause and prejudice for his defaulted claims. Nor can he demonstrate that this Court's failure to review his claim on the merits would result in a substantial miscarriage of justice. Therefore, the claims in Ground 1 (A), (E), (F), Ground 2 (A) (B) (G) (H) (I), and Ground 4 are exhausted and defaulted, and must be dismissed.

### V. Standard of Review

Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's

---

McCoy's "complet[e] oppos[ition] to [English] telling the jury that [McCoy] was guilty of killing the three victims"; instead of any concession, *McCoy pressed English to pursue acquittal.*

Id. at 1506 (emphasis added) (footnote omitted). The trial court had the opportunity to prevent or cure the error before trial.

determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) … to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 18. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland. Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. 466 U.S. at 687. AEDPA deference in the context of "a Strickland claim evaluated

under the § 2254(d)(1) standard" is "doubly deferential judicial review." Knowles, 556 U.S. at

123. Put another way, federal courts on habeas review give the benefit of the doubt to the state

courts and to defense counsel. Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). "Section

2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal."

Valentino v. Clarke, 972 F.3d 560, 581 (4th Cir. 2020) (quoting Harrington, 562 U.S. at 102-03)

(additional citation omitted).

      Strickland's first prong, the "performance" inquiry, "requires showing that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition

indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable

professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of

counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828

(4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial

strategy, and press those claims with the greatest chances of success." Id.

      Strickland's second prong, the "prejudice" inquiry, requires showing that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a

"probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a

different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting

Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is

whether the state court, which has "substantial 'latitude to reasonably determine that a defendant

has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would

disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

*A. Ground 2 (C)*

In Ground 2 (C), Jadav alleges his counsel was ineffective for failing to investigate,

develop, and produce exculpatory video evidence. The state habeas court[9] rejected this claim

finding:

> that the surveillance video was thoroughly discussed at trial. While counsel
> admitted he had not viewed the entire video, the Commonwealth told the Court
> that the police reviewed the full ten hours of video and there was nothing
> exculpatory on the video. The Commonwealth told the Court that the video did
> show other vehicles driving by, but that the Commonwealth was going to use the
> video simply to show that a vehicle matching the defendant's vehicle was also
> seen in the video.
>
> The Court further finds that, contrary to Jadav's conclusory assertion that the
> video would prove that he was not at the crime scene, the video does not show the
> crime scene. Rather, the surveillance video shows the street upon which a car
> would likely travel to exit the neighborhood. Thus, the video could not have
> shown that Jadav was not present at the crime scene. In addition, the street upon
> which the security camera was trained was in the opposite direction of the Jadav
> residence. It was the Commonwealth's theory that Jadav and his wife went for a
> walk and, once in the secluded area, Jadav took the hammer from the backpack
> and used it to beat his wife to death. Jadav then returned home to change his
> clothing before driving out of the neighborhood to discard the hammer and
> clothing he wore during the killing.
>
> The Court finds that Jadav failed to demonstrate that there were other people at
> the crime scene or that the entirety of the video would have been beneficial to
> him. That omission is fatal to his claim of ineffective counsel.
>
>> [W]ithout a specific, affirmative showing of what the missing
>> evidence or testimony would have been, a "habeas court cannot
>> even begin to apply Strickland's standards" because "it is very
>> difficult to assess whether counsel's performance was deficient,
>> and nearly impossible to determine whether the petitioner was
>> prejudiced by any deficiencies in counsel's performance."

---

[9] Because the circuit court's order was the last reasoned state court decision on petitioner's ineffective assistance of
counsel claims, its reasoning is imputed to the Supreme Court of Virginia. See Brumfield v. Cain, 576 U.S. 305, 313
(2015) (applying "look through" doctrine to evaluate state trial court's reasoned decision denying claim on the
merits where state supreme court summarily denied petition for review).

Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (citation omitted). See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed."). See also Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (defendant who alleges failure to investigate on part of counsel must allege with specificity what investigation would have revealed and how it would have altered outcome of trial).

The Court finds that Jadav's claim that this video was beneficial to him is conclusory and speculative. Therefore, he fails to demonstrate that trial counsel's performance was deficient.

The Court further finds that Jadav fails to demonstrate he suffered prejudice considering the overwhelming evidence of his guilt. The trial in this case was lengthy and included substantial evidence of Jadav's guilt. The lack of prejudice is abundantly clear from the Court of Appeals determination of the facts as well as the trial transcripts.

Ultimately, the evidence at trial demonstrated that Jadav was a deceitful, unfaithful husband, who plotted the murder of his wife to obtain the proceeds of life insurance policies. Jadav convinced his wife's parents to leave his house that evening. He then engaged in deceptive text messaging to cover his tracks. The evidence showed that his cell phone traveled from his house that night, to the location the murder weapon and his clothes were later found. The clothes found with the murder weapon matched what Jadav had previously been wearing that evening. The evidence showed that after Jadav allegedly discovered his brutally beaten wife in their neighborhood the next morning, he was not emotional during any subsequent interactions with the police. He did not attend memorial services for his wife, was cold to her family, and immediately discarded her possessions. The evidence also showed he had recently been searching terms such as "homicide," "accidental death and dismemberment insurance," and "death by natural causes," and that the victim had recently obtained life insurance for one million dollars.

The Court finds that in light of the entire record at trial, Jadav fails to demonstrate that but for counsel's alleged failure to investigate the security video, the outcome of his trial would have been any different. Therefore, Jadav has failed to demonstrate both deficient performance and prejudice as required by Strickland and his claim II is dismissed.

(Hab. at 204-06).

The circuit court's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground 2 (C) will be dismissed.

*B. Ground 2(D)*

In Ground 2 (D), Jadav alleges his counsel was ineffective for failing to protect his

<u>Miranda</u> rights. The state habeas court rejected this claim finding that:

> "Numerous choices affecting conduct of the trial, including the objections to
> make, the witnesses to call, and the arguments to advance, depend not only upon
> what is permissible under the rules of evidence and procedure but also upon
> tactical considerations of the moment and the larger strategic plan for the trial."
> <u>Gonzalez v. United States</u>, 553 U.S. 242, 249 (2008). "[T]he lawyer has — and
> must have — full authority to manage the conduct of the trial." <u>Taylor v. Illinois</u>,
> 484 U.S. 400, 418 (1988).

> The Court finds that trial counsel made the reasonable tactical decision that he
> wanted the jury to be able to hear Jadav's statements to police. The defendant's
> strategy at trial was that Jadav was a fully cooperating husband who had not
> murdered his wife. Trial counsel crossed the officers extensively on Jadav's
> willingness to "tell you everything." Counsel highlighted that Jadav was always
> cooperative and never refused to answer a question.

> The Court finds that during closing argument, counsel argued that Jadav was "a
> man who has participated in every way imaginable that they've asked." Counsel
> highlighted for the jury the 911 recording where Jadav first said what happened to
> his wife, then Jadav's statements to the responding officer, and how Jadav had
> cooperated "with them every single way." Counsel further argued:

>> They [the police] break into his house. They search everything. He
>> never tries to stop them. He doesn't lawyer-up. He doesn't say that
>> you can't do this to me, people, I have rights. He cooperates every
>> way he can. The Court finds that admitting Jadav's statements to
>> police was a tactical decision by counsel, to show Jadav was a
>> cooperating husband with nothing to hide. Jadav fails to
>> demonstrate that this was constitutional deficient performance in
>> light of the record.

> The Court also finds that Jadav fails to articulate what statements should have
> been suppressed, or how those statements ultimately affected his trial. This failure
> of proof is fatal to his claim. <u>See</u> <u>Muhammad [v. Warden]</u>, 274 Va. [3,] 18, 646
> S.E.2d [182,] 195 [(2007)].

> The Court further finds that, considering the overwhelming evidence of his guilt,
> as found previously, Jadav cannot show prejudice. Importantly, none of Jadav's
> statements to law enforcement were statements of fault or confession. As
> previously found, there was significant evidence apart from Jadav's statements to
> convict him of murder. Therefore, the Court finds that Jadav fails to demonstrate
> but for counsel's alleged failure the outcome of his trial would have been
> different. Claim XI is dismissed.

[Dkt. No. 14-7 at 22-23].

The circuit court's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground 2 (D) will be dismissed.

### C. Ground 2 (E)

In Ground 2 (E), Jadav alleges counsel was ineffective for failing to investigate state evidence, including luminol testing, his own text messages, the PERK kit, time of death, and the forensic report. [Dkt. No. 1 at 68-69]. The state habeas court rejected this claim finding:

> Jadav argues that trial counsel should have further investigated the alleged time of death and presented an "exculpatory" police report. The Court finds that the police report is plainly not exculpatory and not useful to Jadav as they all indicate screaming at the same time. Jadav relies on a neighbor's statement in the report, attachment G to his petition, that states they heard fireworks around 10:00 p.m. and screaming around 11:00 p.m., but thought it sounded like kids. In Pet. Ex. I, another neighbor also stated he heard screaming around 11:00 p.m., what sounded like a woman screaming, but could not see anyone.
>
> At trial, Willie Stroble, a resident of the Honey Meadows subdivision testified that he heard a woman scream around 11:00 p.m. on Sunday September 4, 2016. Roger Hultgren, a neighbor of Dr. Stroble, testified that he also heard the scream and that it sounded like it came from an area behind his house. The victim's body was discovered behind Mr. Hultgren's residence in the early morning hours of September 5, 2016. Therefore, the Court finds that the police reports were not exculpatory, and Jadav fails to demonstrate deficient performance and certainly fails to demonstrate prejudice in light of multiple witnesses having heard a woman screaming at approximately 11:00 p.m. The Court also finds that Jadav merely speculates that if trial counsel had hired an expert to investigate the time and manner of death it would have been beneficial to him. The petitioner has failed to offer any proof which is fatal to his claim that counsel rendered ineffective assistance and he was prejudiced by that deficient performance. See Muhammad, 274 Va. at 18, 646 S.E.2d at 195; Hedrick v. Warden, 264 Va. 486, 521, 570 S.E.2d 847, 862 (2002) (both finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim).
>
> Jadav further speculates that if trial counsel had requested a physical evidence recovery kit (PERK) it would have revealed helpful evidence. Jadav suggests that because the victim was a woman, a PERK kit should have been done. In fact, a

PERK kit was collected from the victim and trial counsel questioned multiple investigators about the PERK kit. Trial counsel ultimately argued in closing that the investigator's decision not to test the PERK kit, along with other testing such as further luminol testing, showed reasonable doubt about the quality of their investigation into the homicide and lack of evidence against Jadav. Jadav fails to demonstrate what additional questioning or investigation would have revealed, or how it would have been beneficial to him. Again, the failure to proffer evidence in support of this allegation is fatal to his claim. See Muhammad, 274 Va. at 18, 646 S.E.2d at 195. The Court finds that Jadav fails to demonstrate the trial counsel's performance was deficient regarding the PERK kit.

Jadav's claim VII is dismissed as speculative because it is not supported by any affidavits from prospective expert witnesses or investigators that counsel allegedly should have hired or what their testimony would have shown. It is, therefore, inadequate to demonstrate defective performance or prejudice under Strickland. See Burger v. Kemp, 483 U.S. 776, 793 (1987) (petitioner "has submitted no affidavit from that [witness] establishing that he would have offered substantial mitigating evidence if he had testified"); Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992); Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir. 1984) (petitioner "has never established how any of those potential witnesses might have testified had they been called"); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (ineffective claim insufficient to warrant relief where petitioner alleges counsel ineffective for failing to call certain witnesses but petitioner fails to proffer what witnesses would have said); United States v. Oliver, 865 F.2d 600, 605 (4th Cir. 1989) (same).

And, as the Court previously found above, the evidence against Jadav was overwhelming. Therefore, the Court finds that Jadav has failed to demonstrate deficient performance or prejudice and his claim VII is dismissed.

(Hab. at 211-13).

The circuit court's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground 2 (E) will be dismissed.

*D. Ground 2 (F)*

Jadav's Ground 2 (F) alleges his counsel was burdened by a conflict of interest because he had a power of attorney for petitioner. The state court rejected this claim, finding:

Jadav makes two allegations that trial counsel had a conflict of interest. The Court finds that both claims fail to assert a true conflict of interest. In claim IV, Jadav

alleges that trial counsel had a conflict of interest because he was Jadav's power of attorney and had a financial interest in his case, causing him not to hire expert witnesses. Jadav argues that this affected his trial because counsel did not want to spend the money required to hire experts in claim IV, and that he did not want to question the victim's parents about their civil case against him in claim XII.

"[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial, and ... in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." Wheat v. United States, 486 U.S. 153, 159 (1988) (emphasis added). Therefore, absent objection, a defendant must demonstrate that "a conflict of interest actually affected the adequacy of his representation." Mickens v. Taylor, 535 U.S. 162, 168 (2002); see also Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

In other words, petitioner's burden is two-fold, he must show: (1) an actual conflict; and (2) an adverse effect on counsel's performance. Jadav has not demonstrated either part of this two-part test.

…. In other words, the petitioner "must show that there was some plausible alternative defense strategy or tactic that might have been pursued, an alternative strategy that was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Guaraldi v. Cunningham, 819 F.2d 15, 17 (1st Cir. 1978) (emphasis added); see also United States v. Gilliam, 975 F.2d 1050, 1059 (4th Cir. 1992) (Hamilton, J., dissenting). The Court finds that a power of attorney does not demonstrate that his counsel had a financial interest in his case. The Court finds that Jadav fails to demonstrate that counsel had other loyalties or interests different than his own at trial. Simply pointing to an ethical breach or lapse, without more, is not sufficient. See Nix v. Whiteside, 475 U.S. 157, 165 (1986) ("breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel").

The Court finds that Jadav has failed to prove an adverse effect on counsel's representation of him. Even assuming an actual conflict existed, "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest." Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002) (citations and quotations omitted). Instead, the burden remains on the petitioner to demonstrate an adverse effect on his defense. See Mickens, 535 U.S. at 168 (requiring demonstration of adverse effect when, in a capital case, the defense counsel had previously represented the deceased victim).

The Court finds that Jadav has not met this burden. Jadav has not identified a plausible alternate defense strategy or tactic that might have been pursued, but was not, because of the alleged conflict. See Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000) (failure to show that counsel did not pursue a plausible defense strategy or tactic on account of an actual conflict of interest does not entitle petitioner to relief). Jadav fails to proffer meaningful evidence or an expert that would have been beneficial to him, if counsel had chosen to hire one. Petitioner has failed to proffer the names of any experts he contends counsel

should have consulted and fails to proffer any experts' affidavits to demonstrate what information these experts could have provided at trial. And Jadav fails to show that attacking the victim's family about their lawsuit and attempting to discredit them would have been sound trial strategy. The Court finds that the petitioner's claims therefore fail both prongs of the Mickens test. Consequently, the petitioner has failed to demonstrate that an actual conflict of interest existed. Claims IV and XIII are dismissed.

(Hab. at 218-20).

The circuit court's findings were not based on an unreasonable determination of the facts, and its conclusions were not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Ground 2 (F) will be dismissed.

*E. Ground 3*

In Ground 3, Jadav alleges the evidence was insufficient to sustain his conviction. A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citation omitted). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318. Claims that the evidence was insufficient "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). As explained in Coleman:

First, on direct appeal, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (per curiam). And second, on habeas review, "a federal

35

court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010)).

566 U.S. at 651.

In addition to the summary of evidence noted herein, the Court of Appeals of Virginia

denied Jadav's claim on direct appeal stating as follows:

> [v]iewed as a whole, the circumstances presented at trial support the jury's finding that [Jadav] was the perpetrator. [Jadav]'s and Reena's marriage was strained in July and August of 2016, and [Jadav] was involved in clandestine affairs with multiple women. When Reena started a new job with over one million dollars in life insurance coverage and named [Jadav] as the beneficiary, [Jadav] immediately began to research homicide and life insurance policies. Within a day of his return from Nashville, [Jadav] isolated Reena from her parents by pressuring them to leave her alone with him and by seizing her cell phone and car key. By his own admission, [Jadav] took a late-night walk with Reena after her parents left. Despite telling police that he went to bed at 10:30 p.m. that night and did not leave the house until the following morning, his cell phone records showed that the phone left the neighborhood at 11:31 p.m., traveled in the direction of the house where the murder weapon was found, and returned at 12:01 a.m. The murder weapon was recovered next to [Jadav]'s shirt, pants, and underwear.
>
> From the cell phone records, the jury could reasonably conclude that [Jadav] lied to the police when he told them he had not left the house all night, and that he did so to conceal his guilt. See <u>Flanagan v. Commonwealth</u>, 58 Va. App. 681, 702 (2011). The evidence also permitted a rational finding that [Jadav] texted Reena's phone at 12:47 a.m. on the night of the murder because he wanted to create an alibi.
>
> The timeline of [Jadav]'s movements on the night of the murder provided further proof that he was the perpetrator. A woman's scream was heard at 11:00 p.m. near the crime scene, and [Jadav]'s phone left the neighborhood at 11:31 p.m., providing him with sufficient time to change his clothes and clean up after the murder before driving to Mitchell's house to dispose of the murder weapon and soiled clothes. Furthermore, Gary testified that the round trip from Honey Meadows to Mitchell's house could take as little time as twelve minutes, providing [Jadav] with ample time to travel to Mitchell's house and return home in the thirty-minute span between 11:31 p.m. and 12:01 a.m., the times his cell phone left Honey Meadows and returned home.
>
> A rational fact finder could also infer that [Jadav] experienced no remorse upon learning of Reena's death; he showed no signs of grief upon finding Reena's

brutalized remains or in discussing her death with the police. [Jadav] avoided telling the 911 operator that Reena was dead, despite her gruesome and extensive head injuries, and instead claimed that she was too heavy to move, a claim that the medical examiner investigator later contradicted when she moved Reena "rather effortlessly." When Dumond later told him that Reena was deceased, his response was, "You're kidding me." Later, [Jadav] attended Reena's funeral, but did not join her family afterward or participate in spreading his wife's ashes. Instead, he cleared the house of her personal belongings. When he was finally arrested, he was carrying a backpack with a large amount of cash, passports, and instructions on how to collect Reena's life insurance proceeds.

[Jadav] argues that the evidence proved that he was researching how to divorce his wife on the night of the murder, suggesting that he did not intend to murder her. However, as the Commonwealth emphasized at trial, [Jadav]'s argument is not supported by the record. The evidence did not prove that he searched the term "divorce" during the early morning hours of September 5, 2016; it showed only that he searched the term "homicide" and "insurance" during the week before Reena was murdered.

Aside from the computer searches, [Jadav] posits several hypotheses of innocence based on the evidence that the Commonwealth did not present. Based on the evidence before the jury, however, a rational fact finder could have found that [Jadav] was the perpetrator. "The reasonable-hypothesis principle 'merely echoes the standard applicable to every criminal case.'" Commonwealth v. Moseley, 293 Va. 455, 464 (2017) (quoting Vasquez v. Commonwealth, 291 Va. 232, 249-50 (2016)). "It is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" Id. (quoting Commonwealth v. Hudson, 265 Va. 505, 513 (2003)). "'Whether an alternative hypothesis of innocence is reasonable is a question of fact' that will be reversed on appeal only if plainly wrong." Jennings v. Commonwealth, 67 Va. App. 620, 626 (2017) (quoting Stevens v. Commonwealth, 38 Va. App. 528, 535 (2002)). Here, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that [Jadav] murdered Reena.

[Jadav] argues further that, even assuming the evidence proved he was the perpetrator, it failed to exclude a reasonable hypothesis that he killed his wife in the heat of passion following an argument. He cites evidence that he and Reena often fought and that they were fighting on the day of her death.

Premeditation, or the "adopt[ion] [of] a specific intent to kill... is what distinguishes first and second-degree murder." Smith v. Commonwealth, 239 Va. 243, 259 (1990) (quoting Rhodes v. Commonwealth, 238 Va. 480, 485 (1989)). To prove premeditation, the Commonwealth need not establish that the accused planned the killing for any specific period of time, only that "[t]he intent to kill... c[a]me into existence at some time before the killing." Smith v. Commonwealth, 220 Va. 696, 700 (1980). "[P]remeditation ... seldom can be proved by direct evidence" and therefore is often proved through circumstantial evidence. Rhodes, 238 Va. at 486. In determining whether the killing was premeditated, the fact finder may consider the circumstances surrounding the killing itself, including the

"brutality of the attack, and whether more than one blow was struck, [and] the disparity in size and strength between the defendant and the victim." <u>Avent v. Commonwealth</u>, 279 Va. 175, 208 (2010) (quoting <u>Epperly v. Commonwealth</u>, 224 Va. 214, 232 (1982)). The fact finder may also consider the accused's conduct after the killing, including efforts to conceal the body, lack of remorse, and efforts to avoid detection. <u>Id.</u>

This Court has upheld a finding of premeditation where the accused brutally beat his victim, inflicting several severe skull fractures through blunt force trauma. <u>See Knight v. Commonwealth</u>, 41 Va. App. 617, 625 (2003). In <u>Knight</u>, this Court decided that the number and severity of the blows provided "[t]he jury [with] sufficient evidence to find the killing was brutal." <u>Id.</u> Similarly, the evidence here shows that Reena's murder was especially brutal, with "at least" fifteen blows to her head with both sides of a claw hammer. The blows broke her jaw, her teeth, and opened her skull, exposing brain matter. In addition, [Jadav] drove an unidentified object into her right temple, leaving a cylindrical "puncture wound" approximately one quarter inch in diameter.

The evidence permitted the fact finder to conclude that [Jadav] carefully planned Reena's murder. <u>See Turner v. Commonwealth</u>, 23 Va. App. 270, 277 (1996) ("homicide committed pursuant to a preconceived plan" is murder in the first degree). During the week before Reena's murder, [Jadav] researched how to claim the proceeds from her recently obtained life insurance policies and continued to pursue extramarital affairs with other women. On the night of the murder, [Jadav] pressured Reena's parents to leave her alone with him and took her phone and car key, eliminating her ability to seek help or to escape. The jury could rationally infer that he took the hammer with him when he walked with Reena through their subdivision and, when they reached an area that was not illuminated, he brutally attacked her at 11:00 p.m. His phone records showed that he did not leave the neighborhood until 11:31 p.m., providing him with the opportunity to clean himself up and change his clothes before driving to Mitchell's house to dispose of the murder weapon and his original clothes.

Based on the planning involved in the murder, as well as the scope and degree of the injuries inflicted, the jury could rationally find that [Jadav] intended to kill Reena when he struck her multiple times in the face and head with a hammer and drove an object into her temple. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that the killing was premeditated.

(CAV at 101-05).

That reasoning is compelling, rendering Jadav's claim on Ground 3 unpersuasive.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 12] is granted, this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[10]

Alexandria, Virginia
January 31, 2023

/s/

T. S. Ellis, III
United States District Judge

---

[10] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.